## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| KATHRYN S. COOK, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **No. 04-2286-CM** |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| **Defendant.** | ) | |
| ——————————————————— | ) | |

## MEMORANDUM AND ORDER

Plaintiff Kathryn S. Cook brings this action for disability insurance benefits under Title II of the

Social Security Act ("SSA"), 42 U.S.C. §§ 401 *et seq.* Plaintiff objects to the Commissioner of Social

Security's finding that plaintiff is not disabled. Plaintiff contends that she has established through testimony

and credible medical evidence that she is disabled within the meaning of the SSA, and that the

Commissioner's decision denying her benefits is not supported by substantial evidence.

**I.      Facts**[1]

Plaintiff filed her application for benefits on January 11, 2001, which was denied initially and on

reconsideration.   Plaintiff filed a timely request for hearing, and Administrative Law Judge ("ALJ") Jack R.

Reed held an evidentiary hearing on April 24, 2003. Plaintiff's Disability Report alleges that she became

disabled on September 27, 2000, due to lung damage, heart valve problems, and high blood pressure.

Plaintiff's request for reconsideration also alleges left side weakness.

---

[1] The court finds that the ALJ has compiled a very thorough and accurate summary of the
voluminous record. As such, the court incorporates by reference the ALJ's recitation of the facts.

During the hearing, plaintiff testified that she was born on November 26, 1964, and that she has a twelfth grade education. Plaintiff has not engaged in substantial gainful employment since her alleged onset date of disability. Plaintiff testified that her relevant prior work experience includes employment as an in-home daycare provider, as a customer service representative where she took orders and was later promoted to supervisor, and as a cashier.

Plaintiff testified that the onset of her disability occurred in September 2001,when she developed coughing, lung problems, and a cold she could not get rid of while working as an in-home daycare provider. After being treated at a hospital with antibiotics, she was released to her home. Plaintiff testified that she was readmitted to the hospital in October 2001, where she was treated for pneumonia and a blood clot that traveled into her lower brain stem. Plaintiff testified that after leaving the hospital, she had a stroke. Plaintiff further testified that since her hospitalization, she experiences constant pain on the entire left side of her body, numbness on her left side, she is unable to sit for more than five to ten minutes at a time, she is unable to stand for more than five to ten minutes at a time, she easily loses her balance, and she cannot walk very far without assistance. Plaintiff also testified that she suffers from congestive heart failure, has two "bad" heart valves, and is currently taking anti-depressants.

Plaintiff's husband, Richard N. Cook, testified that plaintiff experiences migraine headaches three to four times a week, that when plaintiff is tired, her left leg drags, and that she falls frequently. Mr. Cook further testified that plaintiff is easily fatigued, has shortness of breath, poor coordination, and at times cannot remain mentally focused enough to hold a conversation, follow a television program, or read a book.

During the hearing, the ALJ also elicited the testimony of vocational expert Janice S. Hastert. Ms. Hastert testified that plaintiff completed twelfth grade and barber training in 1993. Ms. Hastert testified that

plaintiff previously performed work as an in-home daycare provider, a customer service representative, including both order taker and supervisory duties, and an accounts receivable clerk.  In his first hypothetical, the ALJ asked Ms. Hastert to assume an individual with the same age, education, past relevant work experience, impairments, including a "history of pneumonia, what has been described as congestive heart failure, or at least a heart dysfunction called mitral valve insufficiency . . . lack of feeling on her left side and . . . trouble sitting for prolonged periods of time," that this individual was limited in carrying ten pounds maximum and two to three pounds with any frequency, and must be given the opportunity to sit or stand during the course of a workday.  Ms. Hastert testified that a person with this description and these limitations could perform the requirements of plaintiff's past job as an order taker, for which 1,600 jobs exist in the state of Kansas and 165,000 jobs exist nationally.   Ms. Hastert also stated that there were other, similar jobs that such a person could perform, such as security monitor (300 jobs in the state of Kansas, 76,000 nationally) and information clerk (100 jobs in the state of Kansas, 16,000 nationally).

For the second hypothetical, the ALJ asked Ms. Hastert to assume the same description and limitations as in the first hypothetical, with the further assumption that plaintiff was "unable to maintain a work schedule because of illness, or problems, due to her medical condition to the extent that she would miss two or three or more days [of] work per month."  Ms. Hastert testified that these limitations would prevent any possibility of work.

For the third hypothetical, the ALJ asked Ms. Hastert to also assume all of the limitations expressed in the first hypothetical, with the additional assumption that "mental depression, or other pain or other problems, would impede her concentration and persistence and pace to the extent that she would have difficulty maintaining a work schedule . . . or remembering and following job instructions, or getting her

work done timely and accurately, or meeting the production quotas or interacting appropriately with coworkers and supervisors and the public." Ms. Hastert testified that this additional limitation would also prevent any kind of work activity.

For the fourth hypothetical, the ALJ asked Ms. Hastert to assume all of the limitations expressed in the first hypothetical, as well as assume that plaintiff "had other problems that would cause her to need to rest or sleep for several hours at a time during the course of the workday, several times a week." Ms. Hastert testified that these limitations would prevent any work activity.

On May 29, 2003, the ALJ found that plaintiff is not "disabled" as defined in the SSA. The ALJ made the following findings:

1.  Claimant met the disability insured status requirements of the Act on her alleged onset date of disability and continues to do so through the date of this Decision.

2.  Claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.  Claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulation[] 20 CFR § 404.1520(b).

4.  Claimant does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4.

5.  Claimant's allegations, and those of her witness, are no more than only partially credible.

6.  The undersigned has carefully considered all of the medical opinions in the record regarding the severity of claimant's impairments[.] (20 CFR 21 § 404.1527).

7.  Claimant retains the residual functional capacity to lift 10 pounds maximum occasionally, and 2 to 3 pounds frequently. She is capable of sustaining a normal 8-hour workday; however, she is limited to job tasks that accord her the option to alternate between sitting and standing at will.

8.  Claimant's past relevant work as an order taker, as typically performed within the economy, does not require the performance of work-related activities precluded by her residual functional capacity[.] (20 CFR § 404.1565).

9.  Claimant's combined impairments do not prevent her from performing her past relevant job as an order taker as it is typically performed within the economy.

10.  Claimant was born November 26, 1964.  She has remained a "younger individual," as that term is defined in the regulations, at all times pertinent herein.  (20 CFR § 404.1563).

11.  Claimant has a "high school" education[.]  (20 CFR § 404.1564).

12.  Claimant has a semi-skilled work background.  (20 CFR § 404.1568).

13.  Claimant has the residual functional capacity to perform a significant range of sedentary work[.]  (20 CFR § 404.1567).

14.  Considering claimant's combined impairments, age, education, past relevant work, and residual functional capacity, there [is] a significant number of jobs existing in the regional and national economies that she could otherwise perform.  A finding of "not disabled" is alternatively reached within the framework of medical vocational rule 201.28.

15.  Claimant was not "disabled" as defined in the Social Security Act, as amended, at any time from September 27, 2000 through the date of this Decision[.]  (20 CFR § 404.1520(e) and (f)).

Plaintiff filed a timely request with the Appeals Council to review the decision of the ALJ. On November 13, 2003, the Appeals Council denied plaintiff's request for review; thus, the ALJ's decision stands as the final decision of the Commissioner.

## II.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), a court may render "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  The court reviews the decision of the Commissioner to determine whether the correct legal standards were applied and whether the record as a whole contains substantial evidence to support the Commissioner's decision.  *Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir. 2003).  The Supreme Court has held that "'substantial evidence'" is "'more than a mere scintilla'" and is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  In reviewing the record to determine whether substantial evidence supports the Commissioner's decision, the court may neither reweigh the evidence nor substitute its discretion for that of the Commissioner.  *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

The court also reviews the decision of the Commissioner to determine whether the Commissioner applied the correct legal standards.  *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  The Commissioner's failure to apply the proper legal standards may be sufficient grounds for reversal independent of the substantial evidence analysis.  *Id.*  The court thus reviews the decision of the Commissioner to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision and whether the correct legal standards were applied.  *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497 (10th Cir. 1992).

Plaintiff bears the burden of proving disability under the SSA.  *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).  The SSA defines "disability" as the inability to engage in any substantial gainful activity for at least twelve months due to a medically determinable impairment.  *See* 42 U.S.C. § 423(d)(1)(A).  To determine disability, the Commissioner uses a five-step sequential evaluation.  The Commissioner determines: (1) whether the claimant is presently engaged in "substantial gainful activity"; (2) whether the claimant has a severe impairment, one that significantly limits the claimant's physical or mental

-6-

ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity ("RFC") to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See* 20 C.F.R. §§ 404.1520, 416.920.  If a claimant satisfies steps one, two and three, he will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, he must satisfy step four.  If step four is satisfied, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

## III.    Discussion

In this case, the ALJ denied plaintiff benefits at step four, finding that, although plaintiff has a "history of an episode of acute congestive heart failure, resolved, with residual mild to moderate mitral and aortic insufficiencies and moderate left ventricular dysfunction; hypertension; hypothyroidism; diabetes mellitus; obesity; gastric reflux; an affective disorder; a personality disorder, not otherwise specified; and a history of alcohol abuse, in remission," she does not have an impairment or combination of impairments listed in or medically equal to one contained in Appendix 1, Subpart P, Regulation No. 4.  In making this determination, the ALJ found that plaintiff's allegations regarding her limitations are not more than partially credible.  The ALJ further determined that plaintiff has the RFC to lift ten pounds maximum occasionally, and two to three pounds frequently, and is capable of sustaining a normal eight-hour workday, but is limited

to job tasks that accord her the option to alternate between sitting and standing at will.  As such, the ALJ found that plaintiff has the RFC to perform her past relevant work, and is therefore not disabled.

Plaintiff first alleges that the ALJ failed to consider the functional demands of plaintiff's past relevant work.  Notably, this is the extent of plaintiff's argument on this point.  Social Security Ruling ("SSR") 82-62 states that, "[i]n finding that an individual has the capacity to perform a past relevant job," the ALJ must make findings of fact regarding (1) the plaintiff's RFC; (2) the physical and mental demands of prior work; and (3) the ability of plaintiff to return to past relevant work given her RFC.  *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993); s*ee also Jason v. Chater*, 1995 WL 275725 (10th Cir. May 10, 1995) (finding that SSR 82-62 requires the ALJ to "develop an adequate factual record regarding the pertinent physical and mental demands of the claimant's past relevant work").

The court finds that the ALJ made a factual finding as to plaintiff's RFC when he found:

> the evidence supports a finding that claimant retains at least a residual functional capacity to lift 10 pounds maximum occasionally, and 2 to 3 pounds frequently.  She is capable of sustaining a normal 8-hour workday; however, she is limited to job tasks that accord her the option to alternate between sitting and standing at will.

Next, the ALJ heard testimony by plaintiff about her prior work, as well as elicited the testimony of the vocational expert, who testified that plaintiff's past work as an order taker is classified as sedentary and semi-skilled.  Although the ALJ did not elicit testimony from plaintiff regarding the specific tasks involved in her prior work as an order taker, the court finds that the vocational expert's testimony regarding the skills of an order taker, along with common knowledge, satisfactorily reconciles this point.  Significantly, plaintiff fails to indicate why ALJ should not have relied on the vocational expert's opinion of the physical and mental demands of plaintiff's prior work.

Finally, the ALJ made factual findings regarding plaintiff's ability to return to past relevant work, stating: "Based upon the uncontroverted testimony of the impartial expert, the Administrative Law Judge finds claimant retains the residual functional capacity to perform the requirements of her past job as an order taker, as it is typically performed within the economy."  Therefore, the court finds that the ALJ sufficiently created a factual record regarding plaintiff's RFC, the physical and mental demands of the plaintiff's prior relevant work, and her ability to return to her prior relevant work as an order taker. Moreover, the court's review of the record demonstrates that there is substantial evidence to support the ALJ's factual findings.

Next, plaintiff argues that the ALJ did not base plaintiff's RFC assessment on any medical evidence, and failed to employ the correct legal standards in assessing the functional demands of plaintiff's past relevant work.  Because plaintiff does not set forth any arguments in support of these assertions, the court declines to address them.[2]

Plaintiff also argues that the ALJ improperly discounted the opinion of plaintiff's treating physician, Dr. Jose I. Dulin.  The Commissioner contends that the ALJ gave specific, legitimate reasons for rejecting Dr. Dulin's opinion, and that the record supports the ALJ's decision to do so.

---

[2] Plaintiff's brief sets forth two subsections entitled "1. ALJ's Residual Functional Capacity (RFC) Assessment Is Not Based on Any Medical Evidence," and "D. The ALJ Did Not Apply the Correct Legal Standards in Assessing Plaintiff's Residual Function [sic] Capacity (RFC)."  However, while plaintiff cites case law under both of these headings (which, incidentally, is almost entirely from the Eighth Circuit), plaintiff does not supply the court with any additional arguments beyond these subsection titles.

Nevertheless, even if plaintiff had thoroughly argued this point, the court, having carefully reviewed the record, would nonetheless affirm the ALJ's findings. Specifically, the court finds that the ALJ based plaintiff's RFC assessment on substantial evidence and employed the correct legal standards in assessing the functional demands of plaintiff's previous employment.

A treating physician's opinion is entitled to great weight because it "reflects expert judgment based on continuing observation of a patient's condition over a prolonged period of time." *Williams v. Chater*, 923 F. Supp. 1373, 1379 (D. Kan. 1996). The law of the Tenth Circuit requires that the treating physician's opinion be given substantial weight unless good cause is shown to disregard it. *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1995). Treating physicians' "opinions are binding upon the ALJ 'unless they are contradicted by substantial weight to the contrary.'" *Hintz v. Chater*, 913 F. Supp. 1486, 1492 (D. Kan. 1996) (quoting *Claassen v. Heckler*, 600 F. Supp. 1507, 1512 (D. Kan. 1985)).

The Tenth Circuit requires the ALJ to consider the following: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship, including treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which the opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict that opinion. *Goatcher*, 52 F.3d at 290 (citing 20 C.F.R. § 404.1527). When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's reports. *Goatcher*, 52 F.3d at 289-90.

Here, the ALJ noted that Dr. Dulin indicated "as tolerated" on nearly every question of his questionnaire regarding plaintiff's medical limitations, leading the ALJ to find that:

> such general responses cannot serve as a detailed treating physician opinion of claimant's residual functional capacity and therefore, cannot be accorded controlling weight, but rather only little weight. The undersigned accords great weight to the objective diagnostic findings, clinical signs and findings,

-10-

and diagnostic impressions contained in Dr. Dulin's actual contemporaneous treatment notes of record, as well as the contemporaneous notes from other treating physicians, as those documents provide for significantly more detailed and longitudinal assessments of claimant's impairments, level of functioning, and resultant limitations.  The undersigned accords limited weight to Dr. Dulin's July 20, 2001, statement regarding claimant's "medical need" for air-conditioning.  In the treatment note on that date, he reported that claimant was asymptomatic.  His earlier treatment notes contain no reference whatsoever to any such "medical need."  Further, that statement comes only upon claimant's direct request and only because she feel behind on her utility payments.  Such circumstances significantly diminish the statement of "medical need."

The court finds that the ALJ was very thorough and complete in articulating exactly why he found some of Dr. Dulin's opinions less than credible while affording some of his opinions great weight.  For that reason, and because great deference should be given to the ALJ's conclusion as to credibility, *Campbell v. Bowen*, 822 F.2d 1518, 1522 (10th Cir. 1987), the court finds that the ALJ did not improperly discount portions of Dr. Dulin's opinion.[3]

**IT IS THEREFORE ORDERED** that the judgment of the Commissioner is affirmed.

Dated this 19th day of September 2005, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**

_____

[3] The court carefully reviewed plaintiff's brief and was unable to find a specific argument that the ALJ improperly discounted plaintiff's and Mr. Cook's credibility.  Therefore, although the Commissioner's brief does discuss this point, the court declines to address it.  The court finds it significant that, consistent with the rest of his opinion, the ALJ carefully and thoroughly outlined his reasons for limiting plaintiff's and Mr. Cook's testimony regarding the degree of plaintiff's mental and physical limitations.  Substantial evidence supports the ALJ's findings regarding plaintiff's credibility.  *See McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002) ("'Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.'" (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995))).  As such, even if plaintiff had argued this point, the court would have nonetheless affirmed the ALJ's findings.

**United States District Judge**